IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CARLOS MENDEZ MEDINA, JR. *et al.*, | ) ) ) | |
| Plaintiffs, | ) ) | 2:22-cv-01031-CB |
| v. | ) ) | Judge Cathy Bissoon |
| ONE STOP CENTER, INC., *et al.*, | ) ) | |
| Defendants. | ) | |

## MEMORANDUM AND ORDER

### I. MEMORANDUM

GTS's Motion for Summary Judgment (Doc. 71) will be denied. Masud A. Omar and One Stop's Motion for Summary Judgment regarding punitive damages (Doc. 69) will be granted. Carlos Mendez Medina, Jr., the first of two drivers in this case, and his passenger will be referred to collectively as "MEDINA." The second driver, Masud A. Omar, and the company who retained his services are identified as "OMAR." GTS is the company for whom MEDINA provided services. Former party and eyewitness Kirby L. Griffin, will be "Mr. Griffin." He was dismissed as a party once everyone agreed he bore no liability.

**GTS's Motion for Summary Judgment**

GTS claims immunity on the basis that MEDINA was its "borrowed servant." GTS admits that it did not obtain workers' compensation insurance for MEDINA. Doc. 83 at 2-3. Its reliance on the "borrowed servant" doctrine, therefore, makes no sense. This is true regardless of which state's law applies.

The borrowed-employment doctrine is a creature of workers' compensation ("WC") law. *See generally* Watson v. Allied Tube & Conduit Corp., 2016 WL 11698042, *4 (E.D. Pa. Sept. 9, 2016); *see also* GTS's Doc. 74 (citing and relying on Watson).  The WC system is a feature of modern employment, commonly known to participants in the workforce. Also familiar, the mutuality of interest between employer and employee.  Employees receive no-fault compensation for work-related injuries, in exchange for their employers' immunity from suit.

The "borrowed employment" concept typically arises when an employer "lends" an employee to another entity for a specific venture.  *See generally* Fetter v. Maersk Line Ltd., 2021 WL 2978881, *2 (3d Cir. Jul. 15, 2021) (non-binding decision, cited as general background only).  It is intended to maintain equilibrium in the WC system, by preventing covered employees from making an end-run around the immunity earned by employers through their participation in (i.e., payment into) the system.  If a participating employer can show that a worker-claimant was its "borrowed" employee, the law (most often) extends immunity to the employer.

GTS claims WC immunity on the premise that MEDINA, technically an independent contractor, was its "borrowed" employee.[1]  GTS claims that, as MEDINA's de facto employer, it is immune from liability on OMAR's claims, notwithstanding the fact that OMAR had no involvement in the putative employment relationship.

The problems with GTS's theory are obvious, and it stated positions, deliberately obtuse. The legitimacy of the WC system, and its doctrinal ancillaries, hinges on the "quid pro quo"

---

[1]  From whom or what entity they were borrowed, the Court has no idea, and GTS does not say.

nature of the benefits and sacrifices. In the absence of no-fault compensation, employer indemnification would invite comparisons, if hyperbolic, to indentured servitude. No-fault compensation without indemnification reflects a level of employer paternalism that few business ventures would abide. A system so wide-ranging in effect requires a level of "buy-in" from its participants. And unless the system is grounded in principles of fairness, buy-in is hard to imagine.

The benefit to GTS, under its formulation, is obvious – the company is immune from suit. Given its failure to participate in the WC system (at least as relates to MEDINA), there is no benefit of the bargain to any employee. There is no bargain. Along the same lines, GTS has failed to explain why the benefits from its "borrowing-employer" status, vis-à-vis *MEDINA*, should extend to OMAR. If GTS achieves employer status over MEDINA, *he* would be hamstrung in attempts to evade GTS's immunity, for example, in a lawsuit against a third-party tortfeasor. Were GTS named as an additional defendant, Pennsylvania law would extend immunity, *see* Doc. 77 at 4 (providing a good summary); and, in Illinois, the company's putative liability would be restricted to what is recoverable under the state's WC statute. Kotecki v. Cyclops Welding Corp., 585 N.E.2d 1023, 1023 (Ill. 1991).

These things have nothing to do with the claims asserted by OMAR. No principle in law or policy recognizes the zone of immunity proposed. This is unsurprising, given the discussions of fairness above. In the world GTS proposes, there wouldn't be any.[2]

---

[2] GTS's positions are so untethered from fundamental legal principles, they are reminiscent of a type seen in pro se litigation. At times, the Court's discussions involve a level of deconstruction so great that the explanations prove more challenging (and laborious) than in highly sophisticated litigation where each side's position is well-lawyered and on point. In a large majority of cases, members of the bar operate in conformity with norms and shared understandings of the law. They are in the same ballpark, or at least playing the same sport. If counsel were unaware they were drawing outside the lines, their lack of intention is equal parts

The remaining aspects of GTS's Motion warrant little discussion. There is no need for prolonged ruminations as to choice of law. GTS's arguments as to duty and proximate cause do not clear the starting blocks. GTS turns the summary judgment standards on their head, reading all evidence and inferences in a light most favorable to itself. Counsel would be hard-pressed to find a court of competent jurisdiction willing to indulge their summary judgment positions. Whatever utility was perceived, counsel must balance the likelihood of success with their appetite for testing the bounds of Rule 11. See Fed. R. Civ. P. 11(b)(2) (legal contentions must be warranted by existing law or nonfrivolous arguments for extension).

**Omar's Motion for Summary Judgment As to Punitive Damages**

Having carefully reviewed the entire record, the Court agrees with OMAR's counsel that Plaintiffs cannot meet the legal standards for reckless indifference.

As counsel have intimated, Plaintiffs' expert report is quite lengthy. Longer is not always better, especially where the author seems to lose track of points along the way. Early in his report, the expert endorsed the statements and conclusions of the lone, neutral eyewitness to the incidents, Kirby Griffin. One of report's earliest "Opinions/Conclusions," offered "to a reasonable degree of engineering and accident reconstruction certainty":

> While speaking to insurance personnel regarding the subject collision, Mr. Griffin stated[,] 'the first tractor-trailer that came [MEDINA's], . . . just seemed like he lost control on the black ice and he went through the guardrail over the hill side.'

---

relieving and unsettling. Not all positions can be countenanced under the rubric of zealous advocacy. The "zeal" aspect is tempered by the advocacy aspect, which imposes duties of good faith and candor. Advocating for an outcome that requires a misapplication of the law, or the commission of clear error, cannot lead to "winning." Improvident rulings are susceptible to reversal on appeal, they erode confidence in the legal system and, most often, the court will suss things out. That is not good for the client, or for counsel – and adverse impressions will not necessarily expire with the case at bar.

4

> Mr. Griffin further states, 'So, the next tractor-trailer[, OMAR's,] **was trying to avoid it, going over into the left lane**.'
>
> Mr. Griffin's statements are supported by the deposition testimony of [Messrs. Medina and Omar, and] . . . are further supported by the damage [the expert] observed to the subject trucks.

Doc. 68-6 at ECF-header pg. 22 of 89 (emphasis added). The opinion is clear and unequivocal, and the case for punitive damages – based on Plaintiff's expert at least – is over.

Otherwise as to the report, the Court will say this much. The undersigned has never seen an expert report say so much, yet so little. After listing the ungodly amount of evidentiary and other materials considered, the report spends several dozen pages recounting, in minute detail, the physical damage that resulted to the vehicles. Little (if any) of those contents are relevant or material to the legal issues presented. When finally turning to the things that do matter, it only gets worse.

The expert's acceptance of Mr. Griffin's accounts notwithstanding, he notes recordings indicating that OMAR's speed of travel, shortly before his crash, was approximately 70 mph. *See* Doc. 68-8 at pgs. 42-43, ¶¶ 41-43. Then he recounts OMAR's post-accident statements that he had slowed down to approximately 40 mph, and offers the following "opinions":

- OMAR's indicated speed of 40 mph is contrary to recorded data, which show his speed as high as 72 mph, *id.* at ¶ 43;

- this inconsistency, coupled with evidence indicating he had "a clear and unobstructed sightline to the [MEDINA] tractor-trailer," conclusively established that OMAR "failed to properly observe the roadway in front of the tractor-trailer he was operating," *id.* at ¶¶ 44-45;

- had OMAR been traveling 40 mph, "he would have had adequate time and distance to avoid colliding with the [MEDINA] tractor-trailer," *id.* at ¶ 50;

- had the brakes on the second axle of OMAR's vehicle been operable (the report previously concluded they were not), and, had he been "properly

paying attention to the roadway," he "would have had an even easier time" avoiding the crash, *id.* at ⁋ 51.

- The report then spends several paragraphs opining, in essence, that OMAR's testimony and contemporaneous records indicating that he conducted a pre-trip vehicle inspection were not credible, because of the expert's determination that the brakes were inoperable prior to the crash. *Id.* at ⁋⁋ 54-63.

The report is problematic in so many ways, it is difficult to know where to begin. First, as effectively demonstrated by OMAR's counsel in Doc. 70, Plaintiff's expert did not meaningfully address the fact that the ½ inch gap between the vehicle's brake shoe and drum surface *was too great to result from natural wear*. Once a gap between the shoe and drum pad occurred, the two parts no longer were in contact, and the gap could not have increased from further usage. The opinion does meet the standards in Rule 702, and moving-counsel's citation to my decision in <u>Rupert v. Ford Motor Co.</u> is fitting.

Next, the expert's opinions plainly veer into areas reserved for the jury. He cannot offer opinions based on his assessment of the credibility of any witness or party.

Even more problematical: his central theme of proximate causation – that OMAR's crash resulted from him going faster than he claimed, and not paying attention – is in obvious contravention of the accounts of Mr. Griffin. As previously noted, Mr. Griffin consistently reported that OMAR "tr[ied] to avoid" the MEDINA vehicle, by "going over into the left lane." Plaintiff's expert not only leaves the assertion unchallenged, he found it "supported by" the other evidence and his examination of wreckage and accident scene. What's more, the expert went so far as to append written summaries of Mr. Griffin's statements, including the statement that OMAR "**<u>did well in getting over to the left lane</u>**. . . . **<u>[He] did everything he could to avoid a fatality and keep his truck as far on the road.</u>**" Doc. 68-6 at pg. 88 of 89 (emphasis added).

And, about the 40 mph versus 70 mph discrepancy. There are two important things neither Plaintiff's counsel nor the expert are eager to discuss. First, *the speed limit at the scene of the accident was 70 mph*. And second, all three drivers – OMAR, MEDINA and Mr. Griffin – were traveling at approximately the same speed when they slipped on black ice and crashed.

Responding officers have testified that each driver was going faster than they should have in light of the weather conditions; but none were given a citation because "[t]here was no way to anticipate" the black ice they encountered. Doc. 68-4, Dep. Tr. pgs. 11-12. The same black ice that caused four other vehicle crashes within .4 miles of each other, and caused one of the responding officers fall when walking on it. Doc. 70 at 12 (citing record evidence).

It is unsurprising that OMAR reported driving at a slower speed. He suffered a traumatic event, and memories around such things are notoriously challenged. There also is the very human aspect of reporting, if not remembering, things in an exculpatory fashion when it comes to accidents and potential blame. In the end, the nefariousness attributed to OMAR by Plaintiffs' counsel and the expert simply is not warranted. Nor do OMAR's post-accident reports have any bearing on whether he acted with reckless indifference in connection with the incident. In fact, if the expert's opinions are attributed to Plaintiffs themselves, OMAR should not receive punishment, but a medal. *See* discussion *supra* (summarizing Mr. Griffin's belief that OMAR's handling of the incident may have saved lives).

The facts of record in this case cannot support a finding of reckless indifference. The evidence is so much to the contrary, an affirmative motion for summary judgment in favor of OMAR would present a closer question. Three drivers encountered the same patch of black ice, and each had the same result. Plaintiffs' steadfast insistence that OMAR somehow is more

culpable, or culpable at all, seems, from the Court's neutral perspective, like a great deal of wishful thinking and grasping at straws.

OMAR did not present an affirmative motion for summary judgment and, if he had, the Court in all likelihood would have been constrained to deny it. The Motion regarding punitive damages could not be more well founded, however, and it will be granted.

Given the findings herein, Plaintiff's expert report and opinions will <u>not</u> be admitted at trial. A *Daubert* hearing is unnecessary. The report mostly addresses things that are not in dispute, and opinions in those regards cannot assist a jury. As to things that are relevant, the report and opinions fail nearly every legal standard applicable under Rule 702, and nothing can be salvaged. The Court presently does not reach the admissibility of OMAR's expert.

Plaintiffs and their counsel are encouraged to take a long, hard look at the evidence in this case. The Court is left with the same question it had at its last Conference. Namely, how has the litigation come this far.

Consistent with the above, the Court hereby enters the following:

## II.  <u>ORDER</u>

GTS's Motion for Summary Judgment (**Doc. 71**) is **DENIED**, and OMAR/ONE STOP's Motion regarding punitive damages (**Doc. 69**) is **GRANTED**.  Soon, the Court will enter an order setting next steps.

IT IS SO ORDERED.

December 31, 2024                                         s\Cathy Bissoon
                                                                          Cathy Bissoon
                                                                          United States District Judge

cc (via ECF email notification):

All Counsel of Record